```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF ILLINOIS
            EASTERN DIVISION
```

| | |
|---|---|
| **THE THOMAS D. PHILIPSBORN IRREVOCABLE INSURANCE TRUST,** | |
| Plaintiff, | Case No. 11 C 3274 |
| v. | |
| **AVON CAPITAL, LLC, and DONALD TRUDEAU,** | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Defendants have filed two motions: one to dismiss Plaintiff's Complaint under FED. R. CIV. P. Rule 12(b)(1) or stay this case and compel arbitration, and one to file a reply longer than 15 pages. The Court grants Defendants' request to file their brief. However, as explained below, it denies their Motion to Dismiss. The Court also denies their alternate request for a stay and order compelling arbitration, but without prejudice to re-file. *Cf. Titus v. Swalls,* No. 7 C 0614, 2010 WL 4181138, at *1 (S.D. Ill. Oct. 20, 2010). For reasons that will become clear, counsel are reminded of their duty of candor to the Court.

### I.   INTRODUCTION

In 2007, Plaintiff Thomas D. Philipsborn Irrevocable Insurance Trust (the "Trust") and Defendants Avon Capital, LLC ("Avon") and Donald Trudeau ("Trudeau") agreed that the Trust would sell three

life insurance policies to Avon. Each policy insured the life of Thomas Philipsborn, and the policies provided for a total payout of approximately $20 million. The policies were issued by three different companies: American General Life Insurance Company ("American General") ($5 million); Transamerica Occidental Life Insurance Company ("Transamerica") ($10 million); and AXA Equitable Life Insurance Company ("Axa") ($5 million). The parties apparently agreed to a total purchase price of $4,550,000. The policies were already collateral for outstanding loans; part of the sale agreement required the buyer to pay off these loans with purchase funds. That is, $3,044,837 of the purchase price would pay off the loans, and the remaining $1,505,163 would go to the Trust.

Plaintiff intimates that the American General and Transamerica sales proceeded successfully, and that it transferred all three policies to Avon. The Trust claims, though, that Defendants shorted it $818,513 on the AXA sale. Plaintiff contends that the sale agreement was not reflected in a single written document, but rather in a series of written and oral promises. None of those promises, they claim, included an arbitration agreement.

Although they are discussed in, neither the Complaint nor the Motion to Dismiss, Defendants evidently submitted three nearly identical Purchase Agreements to Plaintiff during the sale process. The Trust executed two and returned them. The third governed the

AXA sale and remains unaccounted for. The two Agreements that the Trust signed permit Avon to accept the contract by countermining or paying the purchase price. Each also includes an arbitration clause.

Defendants attached a copy of the American General Purchase Agreement to their Motion to Dismiss. They implied that that contract governed the AXA sale under dispute.

The Trust initiated arbitration in September 2008. In the arbitration Complaint, the Trust alleged that it executed all three Purchase Agreements. It now claims that the Complaint reflects a misunderstanding, and that no AXA Purchase Agreement exists. (That Complaint also alleged that the Transamerica policy was foreclosed upon because Avon never satisfied the loan that it secured. That claim is not at issue here.) The American Arbitration Association notified the parties in September 2009 that arbitration could not proceed until Avon paid its portion of the arbitration fee. Counsel for both sides conferred, and the resulting discussion is the subject of much contention.

In October 2008, Defendants' counsel wrote:

> As for the AAA fees, Avon will agree to pay them on or before October 26, with the understanding that any right arbitration will be waived if the fees are not paid. On that point, however, we ought to retain some flexibility such that if we are making tangible progress toward settlement we can revisit the issue. I know that you have said Mr. Philipsborn will not agree to another continuance of the hearing but, as we

> discussed, future developments might change
> his view. We should keep the same flexibility
> in mind when it comes to these fees. If we
> agree on that, then I believe we are in a
> position to confirm this with [AAA].

Judging by the piecemeal e-mail evidence appended to the various filings, settlement talks may have continued through April 2010. Apparently, Avon never paid its arbitration fees.

In May 2011, Plaintiff filed this action. Defendants now move to dismiss, or alternatively to stay this case pending arbitration. Plaintiff opposes, claiming that the parties' contract (as evidenced by their communications) does not provide for arbitration. Plaintiff also claims that Defendants waived their right to arbitrate by refusing to pay their fees in the first arbitration. Defendants continue to argue that the parties agreed in writing to arbitrate, and deny that they waived that right, pointing out that settlement talks continued after Plaintiff "withdrew" their claim in arbitration.

## II. **LEGAL STANDARD**

The Federal Arbitration Act was enacted to protect arbitration agreements from disfavor and place them on the same footing as other contracts. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 288-89 (2002). The FAA obliges courts to stay proceedings and/or compel arbitration if an issue in litigation is covered by a valid arbitration agreement. *Van Tassell v. United Mktg. Grp., LLC*, --- F.Supp.2d ----, 2011 WL 263-2727, at *13 (N.D. Ill. July 5, 2011).

Because arbitration is a matter of contract, a court must conclude that the parties agreed to arbitrate an issue before it compels them to arbitrate. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S.Ct. 2847, 2856 (2010). The party seeking to compel arbitration therefore must establish that the parties' arbitration agreement "was validly formed, covers the dispute in question, and is legally enforceable." *Van Tassell,* at *13.

### A. Motion to Dismiss or Stay Pending Arbitration

Upon a Rule 12(b)(1) motion, a Court may review all available evidence to ascertain whether it has jurisdiction. *Provident Life & Accident Ins. Co., v. Grganto*, No. 97 C 4021, 1997 WL 711432, at *1 (N.D. Ill. November 7, 1997). However, in the Seventh Circuit, when a party invokes a valid arbitration clause, the proper course of action is to stay the proceedings. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 732 n.7 (7th Cir. 2005). If the agreement calls for arbitration in another district, dismissal under Rule 12(b)(3) may be appropriate. *Id.* at 733.

### B. Whether There Is An Arbitration Agreement

Courts should order arbitration only when satisfied that neither an arbitration agreement's formation nor its enforceability is contested; if either is, a court must intercede. *Granite Rock Co.*, 130 S. Ct. at 2857-58. Thus, challenges to the enforceability of an entire contract belong to the arbiter. *Janiga v. Questar Capital Corp.,* 615 F.3d 735, 737-38 (7th Cir. 2010). However,

challenges to an arbitration agreement's validity, or claims that no contract exists, belong to the courts. *Id.* Thus, even if the parties agree that they formed a contract, a court must settle any dispute about whether it included an arbitration clause. *Hartford Fire Ins. Co. v. Henry Bros. Constr.*, No. 10 C 4746, 2011 WL 3563138, at *3 (N.D. Ill. August 10, 2011).

Whether an arbitration agreement exists here is determined by the Illinois law of contract formation. *See Goodale v. George S. May Int'l Co.,* No. 10 C 5733, 2011 WL 1337349, at *1 (N.D. Ill. April 5, 2011). In Illinois, the goal of contract interpretation is to give effect to the parties' intent. *Gallagher v. Lenart,* 226 Ill.2d 208, 232 (2007). The contract language, given its ordinary meaning and read in context, is the best evidence of that intent. *Id.* Extrinsic evidence is only used to clarify an ambiguous or incomplete contract. *Weiland Tool & Mfg. Co. v. Whitney,* 44 Ill.2d 105, 114-15 (1969). Furthermore, "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together." *Gallagher,* 226 Ill.2d at 233.

If a party denies that it agreed to arbitrate, it must come forward with sufficient evidence to create a triable issue of fact, as under Rule 56. *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir. 2002). As on a motion for summary judgment, the court accepts the evidence of the party opposing arbitration, and draws

inferences in its favor. *Van Tassell,* at *13. If the party opposing arbitration carries its burden, the case proceeds to a trial on the arbitration question. However, if a court finds a valid, enforceable arbitration agreement, any doubts as to the scope of the agreement will be resolved in favor of arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

### C. Waiver of the Right to Arbitrate

Finally, a court must decide whether a party has, through its actions or inactions, waived its right to arbitrate. A party can waive that right either expressly or by implication. *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650 (7th Cir. 2000). The test for waiver is whether, under the totality of the circumstances, the party seeking arbitration acted in a way that is fundamentally inconsistent with the exercise of that right. *Id.* at 650-51. Once a party selects a forum, courts should enforce that decision; the key question is whether the party intended its forum choice, not whether any party would be prejudiced by switching. *Id.* at 650.

### D. Candor to the Court

Counsel for both sides share an obligation to be candid with the Court. A lawyer's duty to present facts and analyze the applicable law in the light most favorable to his client "is not a mandate to engage in blatant gamesmanship or revisionist history. . . . [A]dvocacy meant to distract, confuse, or obfuscate is unhelpful and inconsistent with an attorney's obligations as an

officer of the court." *U.S. Commodity Futures Trading Com'n v. Lake,* 540 F.Supp.2d 994, 1014 (N.D. Ill. 2008) (citations omitted). Lack of candor can lead to dismissal with prejudice. *Humphrise v. Cracker Barrel,* No. 03 C 3765, 2004 WL 1630512, at *1 (N.D. Ill. July 16, 2004).

## III. DISCUSSION

### A. Dismissal Versus Stay

The Seventh Circuit tells us that when a party seeks to compel arbitration, the proper practice is to stay rather than dismiss the case. Thus, this Court denies the motion to dismiss. However, Defendants' alternative requested relief of a stay and order compelling arbitration may be available. Accordingly, the Court must determine whether there is a valid arbitration agreement in order to rule on the substance of Defendants' motion.

### B. Whether the Parties Agreed to Arbitrate

Defendants maintain that the parties agreed in writing to arbitrate. In contrast to their original motion, Defendants now argue that the parties never agreed on most of the terms of the AXA sale, but agreed on arbitration. They also argue that even if the parties forged a contract comprised of more than the Purchase Agreements, those Agreements (and their arbitration clauses) still form part of the contract. For support, they point to Plaintiff's initial arbitration demand, the arbitration complaint, and the fact that the Trust signed Avon's Purchase Agreements which required

arbitration. Finally, they argue that Plaintiffs accepted the terms of the AXA Purchase Agreement by performance — that is, by transferring the AXA policy.

Defendants assert that the "equivocal" e-mail from their counsel could not have waived their arbitration rights, and stress that Plaintiffs have suffered no prejudice in this process. Their prejudice argument is somewhat questionable, in light of Plaintiff's claim that Defendants' refusal to pay the arbitration fees compelled them to file this suit. In any event, the parties have offered such scant and incomplete information on the arbitration that this Court cannot properly evaluate the waiver argument at this stage.

Defendants' claim that compelling arbitration would best effect the parties' original intent may have merit. However, most of this argument appears for the first time in their reply brief, which overlaps very little with the original motion. Accordingly, the Court declines to rule on the substance of the stay motion without offering Plaintiff an adequate chance to respond. If they so choose, Defendants may re-file their motion to stay, putting forth whatever arguments they believe have merit in light of the full case history and Rule 11.

Both parties began this case with a baffling disinclination to familiarize the Court with the relevant facts and procedural history. Although they may have preferred to keep the true

circumstances to themselves, awaiting an opportunity to deploy them as "smoking guns" against the other party, such an approach is an active hindrance to this Court and the pursuit of truth. In particular, Defendants' Motion to Dismiss skirted the line of actively misleading the Court. Although the Response and Reply briefs were a marked improvement, this Court concludes that the parties have revealed the relevant information in such a convoluted and deficient manner that it cannot reach a decision as to the arbitrability of Plaintiff's claims. It accordingly denies Defendants' Motion without prejudice to re-file with a more complete analysis of the facts.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1. Grants Defendants' Request File a Brief in Excess of 15 Pages;

2. Denies Defendants' Motion to Dismiss under Rule 12(b)(1); and

3. Denies Defendants' Request to Stay This Action Pending Arbitration, without prejudice to re-filing.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

**DATE:** 10/31/2011