IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **THE THOMAS D. PHILIPSBORN IRREVOCABLE INSURANCE TRUST,**<br><br>      **Plaintiff,**<br><br>  v.<br><br>**AVON CAPITAL, LLC and DONALD TRUDEAU,**<br><br>      **Defendants.** | **Case No. 11 C 3274**<br><br>**Hon. Harry D. Leinenweber** |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Renewed Motion to Stay and Compel Arbitration and their Motion to Dismiss. For the reasons stated herein, the motions are denied.

### I. INTRODUCTION

The Court set out in some detail this case's background in its October 31, 2011 opinion, and will not repeat it all here. Some new information has been provided; unfortunately, much of it comes in the form of emails for which no one has explained the identity and affiliation of the senders and/or recipients.

Plaintiff Thomas D. Philipsborn Irrevocable Insurance Trust (the "Plaintiff") is an Illinois trust. Defendant Avon Capital, LLC ("Avon") is a Connecticut limited liability company and Defendant Donald Trudeau ("Trudeau") (collectively, the

"Defendants") is a Connecticut resident and a manager and member of Avon.

In 2007 and 2008, Plaintiff and Defendants engaged in a series of transactions that involved the sale of three insurance policies which insured the life of Thomas Philipsborn. The Complaint and its exhibits indicate that Trudeau was a primary contact for Plaintiff and its agents.

Defendants contend that they sent Plaintiff three sale agreements – one for each policy – that were virtually identical but for the name of the policy at issue and the purchase price. Each, they claim, contained arbitration agreements. Defendants state that Plaintiff executed and returned two of the sales agreements, but never returned the agreement at issue here ("the AXA policy"). Although it claimed otherwise in its complaint in arbitration (discussed below), Plaintiff now appears to contend that it never received a sales agreement for the AXA policy. Instead, it claims that the contract for (at least) the AXA policy was reflected in a series of written and oral promises – none of which included an arbitration agreement.

The sales of the first two policies – for which there are executed sales agreements – proceeded successfully. The AXA policy was not yet outside of the contestability period, however, and so was sold separately. Plaintiff claims that it transferred the AXA policy to Defendants, but never received the full purchase price.

Defendants claim that a third party took possession of the AXA policy, at least initially.

As discussed below, Plaintiff initially brought this action as a complaint in arbitration against Avon alone. In this suit, Plaintiff alleges causes of action for breach of contract, promissory estoppel, and unjust enrichment relating to the sale of the AXA policy. Each count is brought against both Avon and Trudeau. Defendants have moved to dismiss Trudeau, and to stay and compel arbitration regarding the remainder of the suit.

## II. <u>LEGAL STANDARD</u>

### A. Motion to Stay and Compel Arbitration

The Federal Arbitration Act ("FAA") obliges courts to stay proceedings and compel arbitration if an issue in litigation is covered by a valid arbitration agreement. *See Van Tassell v. United Mktg. Grp., LLC*, 795 F.Supp.2d 770, 786 (N.D. Ill. July 5, 2011). To compel arbitration, the Court must find that a written arbitration agreement existed. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005); 9 U.S.C. § 4. If the existence of an arbitration agreement is genuinely disputed, courts proceed to trial on that issue. 9 U.S.C. § 4. In making that determination, courts apply a standard akin to that for summary judgment. *Van Tassell,* 795 F.Supp.2d. at 787.

**B. Motion to Dismiss**

The Court accepts as true all well-pleaded facts in the complaint and draws all inferences in Plaintiff's favor. *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). A complaint must contain a "short and plain statement of the claim," including facts which allow the court to reasonably infer that the defendant is liable for the alleged misconduct. FED. R. CIV. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Exhibits attached to a complaint are part of the pleadings. *Int'l. Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729 (7th Cir. 1999).

Generally, under Illinois law, if the agent of a disclosed principal signs a contract on the principal's behalf, he is not liable for breach of that contract unless he agreed to be personally liable. *See Knightsbridge Realty Partners, Ltd.-75 v. Pace*, 427 N.E.2d 815, 819 (Ill. App. Ct. 1981).

### III. <u>DISCUSSION</u>

**A. Motion to Stay and Compel Arbitration**

***1. Whether There was a Written Agreement to Arbitrate Regarding the AXA Policy***

Because neither party has suggested otherwise, the Court assumes that the following analysis applies equally to Trudeau and Avon. Furthermore, because neither party appears to challenge the

- 4 -

admissibility of any provided documents, the Court assumes that they are properly considered at this stage.

Defendants contend that although the parties never agreed on most of the sale terms for the AXA policy, they did agree to arbitrate. This is so, it says, because Avon gave Plaintiff three virtually identical sale contracts, each containing an arbitration clause. (For support, it cites Plaintiff's Complaint in arbitration, discussed below.) It claims that Plaintiff accepted the arbitration clause relating to the AXA policy, because even if it never signed the sale agreement, Plaintiff accepted it by transferring the AXA policy and/or by instituting an arbitration claim.

Plaintiff's arbitration complaint clearly alleges that Plaintiff received, executed, and returned all three sale contracts. Def.'s Ex. E ¶ 9, 10. That is a factual admission, admissible (but not incontrovertible) here. *See Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996). In considering it, however, the Court also considers the entire record, and affords Plaintiff an opportunity to explain the context. *Enquip v. Smith-McDonald Corp.*, 655 F.2d 115, 118-19 (7th Cir. 1981).

Plaintiff now argues (and offers an affidavit to support) that the allegation in the arbitration complaint was based upon a mistaken assumption that such a contract existed and would surface eventually. During discovery, Plaintiff contends, it learned that

no such document exists. *See* Zelechowski Aff. ¶ 5. Although Defendants rely on Plaintiff's admission that it received all three contracts, even they reject part of that admission, by claiming that Plaintiff did not actually return an executed AXA sale agreement. Given that despite the volume of correspondence provided to the Court, Defendants point to no other evidence that a written arbitration agreement for the AXA policy existed or was sent to Plaintiff, the Court finds that there is a question of material fact as to whether the parties agreed in writing to arbitrate AXA-related claims. *See, e.g.,* Defs.' Mem. In Supp. 2-3, 9; Reply 2-3 (and citations therein).

Because there is a factual issue as to whether a written agreement existed, Defendants' arguments that Plaintiff accepted it by performance or by filing an arbitration petition are unavailing. (Indeed, Defendants' cited cases all involved written agreements.) That Plaintiff filed an arbitration claim may be good evidence that it intended to arbitrate; it does not, however, prove that the parties agreed in writing to do so.

Defendants argue in their reply that, even accepting Plaintiff's claim that the parties' communications constitute the contract, that contract necessarily includes the sales agreements. However, as noted, the existence of such an agreement for the AXA policy is disputed; it is unclear what benefit Defendants could derive here from the arbitration clauses in the other two sales

contracts. Because of the factual question, the Court would normally proceed to trial. 9 U.S.C. § 4. However, a trial is not necessary here, as the Court finds that Defendants waived any right to arbitrate.

### *2. Whether Defendants Waived Their Right to Arbitrate*

"Despite the federal policy favoring arbitration, a contractual right to arbitration can be waived." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). Waiver can be explicit or inferred. Waiver is inferred if, under the totality of the circumstances, the party acted fundamentally inconsistently with its right to arbitrate. *Id.* Several factors are relevant; a party's diligence or lack thereof weighs heavily among them. *Id.* Additional factors include whether the party participated in litigation, or delayed its arbitration demand; prejudice to the other party is not necessary, but is relevant. *Id.*

This is not an ordinary waiver case, wherein one party claims that the other waived by participating in litigation. Essentially, Defendants' first filing in this Court was a motion to compel arbitration. To properly explain the Court's conclusion, then, some additional background is necessary.

By September 2008, Plaintiff had transferred all three policies to Defendants (or at least, to the intermediaries), and Defendants had paid the full purchase price for the first two

policies. Allegedly, Defendants had not paid fully for the AXA policy, and so Plaintiff filed an arbitration demand and then an arbitration complaint on October 14, 2008. There may have been some settlement discussions in the ensuing months. Eventually, the arbitration was tentatively scheduled for September 2009. The American Arbitration Association ("AAA") told the parties that any remaining deposits were due 30 days in advance of the hearing. As the hearing drew closer, however, Avon had not paid its share.

In September, the AAA notified the parties that if the fees were not paid by September 11, the arbitrator might suspend the proceedings. The parties evidently discussed moving the hearing and Avon's failure to pay. On September 16, 2009, Defendants' counsel sent Plaintiff's counsel an e-mail, as follows:

> I have spoken to Avon about your position concerning a continuance of the hearings. We can agree to continue the hearing until the week of November 16th, subject to the arbitrator's availability. As for the AAA fees, Avon will agree to pay them on or before October 26th, with the understanding that any right to arbitration will be waived if the fees are not paid. On that point, however, we ought to retain some flexibility such that if we are making tangible progress toward settlement we can revisit the issue. I know that you have said that Mr. Philipsborn will not agree to another continuance of the hearings, but, as we discussed, future developments might change his view. We should keep the same flexibility in mind when it comes to these fees. If we agree on that, then I believe we are in a position to confirm this with [the AAA].

Zelechowski Aff. Ex. 2. Plaintiff's counsel avers that he later contacted Defendants' counsel and learned that Avon still had not paid. He contends that he asked whether counsel understood that

this meant arbitration was waived; he was told, effectively, that Plaintiff should do whatever it needed to do. Zelechowski Aff. § 13. Avon never paid the fees.

The parties received another payment-due notice from AAA on November 3. Plaintiff's counsel avers that he then contacted AAA, and upon learning that Avon still had not paid, asked to withdraw the arbitration claim. AAA evidently wrote again November 24, stating that the claim had been removed from the arbitration calendar and that the dates could be restored, but "all deposits would have to be paid." *Id.* Ex. 4.

AAA evidently wrote to the parties on February 1, 2010, noting that the case was still "active" and seeking an update. Defs.' Ex. R. On February 5, evidently responding to an update, AAA suggested that its mediators might be of service. Defs.' Ex. S. AAA again sought an update on April 6, 2010, noting that last it knew, the parties were in settlement negotiations. Defs.' Ex. T. Plaintiff filed its Complaint in this case on May 16, 2011.

Defendants argue that the email and their attorney's alleged comments were equivocal, in that the offer to waive was contingent on Plaintiff's continued flexibility as long as the parties were making settlement progress. They argue that there is no evidence that Plaintiff accepted this offer; somewhat perplexingly, in light of the defense exhibits discussed above, they repeatedly stress that there "is no evidence regarding any further settlement

negotiations between the parties, much less evidence that such negotiations were not productive." *See* Reply 9. (No evidence, one presumes, *apart* from this ongoing litigation.) Also somewhat surprisingly, they contend that "Avon did not refuse to arbitrate and, in fact, . . . actively participated throughout the arbitration process." Reply 11.

The Court cannot agree that the September 16 email merely made a contingent offer. It stated that would Defendants would waive their rights, but asked for "flexibility" to "revisit the issue" if the parties were progressing toward settlement. There is no indication, however, that the issue was revisited either before or after the deadline had passed.

Even if the email is not an explicit waiver, the Court finds that Defendants implicitly waived any right to arbitrate. At the very least, that correspondence put Avon on notice that it was in danger of forfeiting its right. Furthermore, AAA explicitly told the parties that all deposits would need to be paid before the matter could be placed back on the arbitration calendar after November. Despite all this, Avon never paid or, it seems, discussed the fees or further arbitration with AAA. Its conduct is, in the Court's view, unambiguously inconsistent with a genuine intent to arbitrate (as opposed to the intent to delay resolution of this matter indefinitely). As the Seventh Circuit has noted, a

party's diligence – or lack thereof – weighs heavily in the waiver analysis.

Nor does Defendant's persuasive authority save its motion. *See Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F.Supp. 1359 (N.D. Ill. 1990). That case is factually distinguishable, and its analysis focuses intensively on the issue of prejudice. Despite Defendants' consistent emphasis on the lack of prejudice to Plaintiff, prejudice is simply not required. (The Court is somewhat skeptical, furthermore, that Plaintiff has not been prejudiced by having to resort to litigation in the face of Avon's longtime failure to pay its deposit, only to face two rounds of motions to compel arbitration.) In light of all of the relevant circumstances, Defendants have waived their right to that arbitration.

### B. Motion to Dismiss

Having decided not to compel arbitration, the Court turns to the Motion to Dismiss. As noted above, Plaintiff brings each of its claims against both Avon and Trudeau. The Complaint alleges that "[a]t all relevant times . . . [Trudeau] was a member or manager of Avon and held himself out as Avon's agent." Compl. ¶ 7. The remaining paragraphs generally refer to "Defendants" or "Avon and Trudeau," rarely distinguishing between the two (or, when they do, noting things like that Trudeau wrote an e-mail reflecting "Defendants'" intent to purchase the policies). *See, e.g.,*

Compl. ¶ 16. Defendants move to dismiss Trudeau, arguing that he cannot be held liable, as he was merely Avon's agent. Also, to the extent that Trudeau is being held liable solely as a member of Avon, they argue, Plaintiff's claims are precluded by the Illinois Limited Liability Company Act.

Plaintiff argues that Defendants misunderstand the Complaint. Trudeau was named in his individual capacity, as he could have acted simultaneously in Avon's and his own interests. Plaintiff does not appear to argue that Trudeau is liable solely as a member of Avon, however; accordingly, the Court need not address Defendants' argument under the Illinois Limited Liability Company Act.

Plaintiff does not appear to dispute that Trudeau was, at least in part, Avon's agent. Upon reviewing the Complaint and exhibits, however, the Court cannot agree with Plaintiff that they plausibly allege, either directly or by inference, that Trudeau agreed to be personally bound to the contract or acted in his own interest. Plaintiff's request to amend the Complaint to add such allegations is granted. Nonetheless, the Court declines to dismiss Trudeau.

Perhaps inadvertently, Plaintiff identified an exception to the general bar on agent liability in Illinois: an agent may be liable if he takes an active part in violating some duty that his principal owes to a third party. *See* Pl.'s Resp. 6-7 (citing

*Merrill Tenant Council v. U.S. Dept. of Hous. and Urban Dev.*, 638 F.2d 1086, 1095 (7th Cir. 1981)). Although Plaintiff cited the case for the proposition that Trudeau could work both on his own behalf and Avon's (and even assumed *arguendo* that Trudeau could not be liable as an agent), it also argued that "Avon owed a duty to plaintiff to complete the sale of the AXA policy as agreed. . . . [The] complaint alleges that Avon and Trudeau actively participated in frustrating and preventing the completion of the transaction." *Id.* at 7. This allegation, the Court finds, is fairly reflected in the complaint; at this stage, Plaintiff has stated a claim against Trudeau.

Some Illinois appellate courts (and at least one district following them) have criticized this exception, narrowed it, or declined to apply it to contract claims. *See, e.g., Strzelecki v. Schwarz Paper Co.,* 824 F.Supp. 821, 829 (N.D. Ill. 1993) (citing *Gateway Erectors Div. of Imoco-Gateway Corp. v. Lutheran Gen. Hosp.*, 430 N.E.2d 20, 22 (Ill. App. Ct. 1981)). However, the Seventh Circuit has applied the exception to a contract claim. *Merrill,* 638 F.2d 1086, 1089-90, 1095. Accordingly, this Court is bound to follow suit. *See Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1029 (7th Cir. 2004) (state intermediate courts do not free district courts from Seventh Circuit holdings regarding state law). *See also, Lance v. Employers Fire Ins. Co.,* 66 F.Supp.2d

921, 924 (C.D. Ill. 1999) (noting that it was bound to follow *Merrill*).

Defendants endeavor to distinguish *Merrill* on the grounds that this Court need not (as the Seventh Circuit did in that case) accept allegations in the Complaint. This is so, they claim, because the exhibits to the Complaint are inconsistent with any theory supporting individual liability. It is true that the clear terms of a contract which is attached to a complaint prevail over contrary allegations. *See Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). Here, however, the alleged contract for the AXA policy involved a series of oral and written statements, and so is not fully represented in the exhibits. In any event, the Court relies on *Merrill Tower* for a different proposition, and finds it controlling here. The Motion to Dismiss Trudeau is denied, but Plaintiff nonetheless has leave to amend its Complaint.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Stay and Compel Arbitration is denied, as is their Motion to Dismiss Defendant Trudeau.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 10/01/2012