```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

THE THOMAS D. PHILIPSBORN
IRREVOCABLE INSURANCE TRUST,
dated July 10, 2005, and ANDREW
I. PHILIPSBORN, as Trustee on
Behalf of THE THOMAS D.
PHILIPSBORN IRREVOCABLE
INSURANCE TRUST, dated July 10,
2005,

        Plaintiffs,

    v.

AVON CAPITAL, LLC and DONALD
TRUDEAU, BENISTAR, LTD., and
BENISTAR ADMIN SERVICES, INC.,    Case No. 11 C 3274

        Defendants.    Hon. Harry D. Leinenweber

    and

AVON CAPITAL, LLC.

    Third-Party Plaintiff,

    v.

FINANCIAL LIFE SERVICES, LLC,

    Third-Party Defendant.

    and

FINANCIAL LIFE SERVICES, LLC,

    Fourth-Party Plaintiff,

    v.

AVON CAPITAL, LLC, THOMAS
PHILIPSBORN and ANDREW
PHILIPSBORN,

    Fourth-Party Defendants.

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

In 2005, as part of his estate planning, Thomas Philipsborn created the Thomas Philipsborn Irrevocable Insurance Trust (the "Trust"), with Andrew Philipsborn as the Trustee. The idea was for the Trust to purchase policies of insurance on Thomas' life with borrowed funds and after holding them for the minimum period of time, which was then two years, sell them to third parties, hopefully, at more than their cash value. The process is known as a "Life Settlement."

In pursuance of this idea, in 2005, the Trust purchased three insurance policies: one from American General Insurance Co. in the amount of $5 million; a second from Transamerica Occidental Life Insurance Company in the amount of $10 million; and a third from AXA Equitable Life Insurance Company in the amount of $5 million (the "Policies"). The Policies had been purchased with funds borrowed from Coventry Capital ("Coventry"), a firm specializing in life settlements.

In 2007, as the loans with Coventry were coming due, the Trustee sought offers from third parties to purchase the policies. He received an offer from defendant Avon Capital, LLC, ("Avon") to purchase the three policies for the sum of $4,550,000, of which $3,044,838 was needed to pay off the loans from Coventry, which would have netted the Trust the sum of

$1,505,162. Avon, who considers itself a broker, was represented in the negotiations by the Defendant, Donald Trudeau ("Trudeau"). While no specific agreement between the parties was executed, the parties considered that they had an agreement to that effect.

As it turned out, the American General policy had insufficient equity to justify its maintenance so that Avon elected to allow the policy to be foreclosed by Coventry. Avon had obtained an agreement on the part of Financial Life Services, LLC ("FLS") to purchase the remaining two policies. FLS is a licensed life settlement provider that specializes in the acquisition of life insurance policies encumbered with loans. Avon was not so licensed so it could have had trouble reselling the policies in some states that required licensing for life settlements. Avon paid the net owed on the American General policy and directed the Trustee to execute the appropriate documents to transfer the other two policies to Financial Life. The two policies were then transferred to Financial Life.

There apparently were no problems associated with the transfer of the Transamerica policy, but the documents that were sent to the Trustee with respect to the AXA policy showed a purchase price of only $600,000 rather than the approximate $1,600,000 that was due under the Agreement with Avon. Financial Life paid off the policy loan to Coventry, and paid the balance left to the Trustee, which left approximately $820,000 still due

the Trustee from Avon under the agreement. FLS subsequently transferred the AXA policy to Life Trading, a FLS subsidiary, who subsequently transferred the policy to Life Partners for $950,000.

When the Trustee received the transfer papers indicating that the purchase price of the AXA policy to Financial Life was only $600,000, an inquiry was made to Avon and Trudeau about the purchase price. Trudeau stated that this price to FLS was agreed upon in order to get the loan to Coventry paid, and that FLS had agreed with Avon that FLS would transfer the policy to Avon for the price of $660,000 (110% of the purchase price) and then Avon would resell the policy to a third party in order to compensate the Trust in accordance with their Agreement. However, FLS either welshed on the deal or Avon was not timely in exercising its repurchase rights or, as FLS contended, the right to repurchase rested solely with the Trust, which did not exercise the right to repurchase.

As a result of the foregoing, Philipsborn has sued Avon and has also sued Trudeau and two other companies, Benistar, Ltd., and Benistar Admin Services, Inc., as undisclosed principals. Avon has, in turn, sued FLS and FLS has turned around and sued Avon, Thomas Philipsborn and Andrew Philipsborn, the Trustee. Each party has filed Motions for Summary Judgment.

## II. DISCUSSION

### A. The Trust's Motion Against Avon

The Trust's Motion against Avon is pretty straightforward: Avon agreed to pay $4,500,000 for the three policies and the payments came up almost $819,609 short. Trudeau's testimony does not dispute this. So the Motion for Summary Judgment is granted in favor of the Trust and against Avon.

### B. The Avon, Trudeau and Benistar Motions Against the Trust

Avon's Motion is denied for the previously stated reasons. The Motions, however, for Trudeau and the two Benistars against the Trust require more discussion. The Trust's claim that Trudeau and the two Benistars are undisclosed principals is based mainly on the testimony of William Liu ("Liu"), a joint venturer with one of the Benistars, who claimed that he was to join with Benistar in purchasing the policies from Avon. Lui wrote in an e-mail that Benistar was to be a purchaser based on information he obtained from Trudeau. He later softened this in his deposition testimony but the jury is entitled to hear both versions. Trudeau was the President of Benistar and as such could act in its behalf. Therefore, Benistar's Motions for Summary Judgment are denied.

The Motion for Trudeau is more complicated because his role was disclosed to the Trust. The Trust contends that he can be

held liable because he was "an active participant" in violating a duty to it, citing *Merrill Tenant Council v. U.S. Department of Housing and Urban Development,* 638 F.2d 1086 (7th Cir. 1981). In addition, when the Trust became concerned wither Avon may be involved with "nefarious" elements, Trudeau gave his personal references in order to show that Avon was on the up and up. This is enough to make it a jury issue. The Motion of Trudeau and the two Benistars is denied.

### C. FLS Motions

#### *1. Motion Against the Trust and Thomas Philipsborn*

FLS' Motion against the Trust and Thomas Philipsborn seeks judgment on its claim for attorneys' fees incurred in defending the third party claim brought against it by Avon. It also claims that it may suffer damages if the AXA policy is contested and voided because of alleged misrepresentations in the policy application. Its argument is that the Trust entered into a contract to sell the AXA policy to it for $600,000 which it specifically agreed was for "fair value." Also, the Trustee in Section 20 of the Agreement acknowledged that "This Agreement . . . replaces any prior agreement which may have been made, either express or implied, by or between the parties with respect to the subject matter hereof." Its current position that the $600,000 was inadequate violates its acknowledgment that $600,000 was "fair value." The fact that the Trust contends in

this Motion that Avon owes it money under its prior agreement, according to FLS violates that above quoted provision.  Because the Trust sued Avon on the prior Agreement, it follows that the Trust contends that the prior agreement with Avon is still in effect.  FLS has incurred attorneys' fees in defending the Third Party Complaint filed against it by Avon.

The first argument, that the Trust's statement that the $600,000 price was fair thus preventing it from claiming more money from Avon does not fly.  The Trust certainly could agree that a specific price was fair but still contend that because another person promised it more money, it has a viable claim for the additional money promised it, even though it exceeds the current fair value, the second point has more validity because it arguably follows that a denial that there was a second contractual promise would prevent the Trust from filing a suit against Avon based on that second contractual promise. However, the Third Party Complaint bought against it by Avon is based, at least in part, and perhaps in its entirety, on a second undertaking of FLS directly with Avon in which FLS allegedly agreed to sell the policy to Avon for $660,000.  The basis for this third party claim against FLS by Avon is promissory estoppel:  that FLS made a promise to Avon that it could repurchase the policy for 110% of the price FLS was paying the Trust and Avon asserts that the failure to live up to this

promise cost Avon the profits that it expected to obtain by reselling the AXA policy. With respect to this claim Avon asserts that there was no contract: only an unambiguous promise. Therefore, arguably, the claim of Avon is not based on an outstanding competing contract between it and the Trust, but based on this unambiguous promise.

In regard to its claim for damages for alleged misrepresentations in the policy application, damages at this point would be completely speculative. First, the contestability period for the policy has expired. *Lauer v. American Family Life Ins. Co.,* 199 Ill.2d 384, 388 (2002)(quoting 215 ILCS 5/224(O). Furthermore, FLS is no longer the owner of the policy, it having transferred it to Life Trading who in turn transferred the policy to Life Partners. Any claims for damages at this point would be wholly speculative.

The Motion for Summary Judgment is therefore denied. The Trust and Thomas Philipsborn's Motion for Summary Judgment is granted.

### *2. Motion Against Avon*

This leaves the Motion for Summary Judgment of FLS against Avon and Avon's Motion for Summary Judgment against FLS. As stated above, since Avon had no written contract between itself and FLS it is now asserting a promissory estoppel claim contending that FLS made an unambiguous promise to allow Avon to

buy the policy from FLS after FLS completed the purchase from the Trust for 110% of the purchase price. However, as FLS points out the promise was not unambiguous: because the repurchase rights were, under the contract between FLS and the Trust, given to the Trust, not Avon. Avon had to be aware of this provision because it forwarded the purchase contract to the Trust and told it to execute the agreement in spite of its provision. The inescapable conclusion is that the "promise" was, at best, ambiguous. The subjective understanding of one party of a promise is not unambiguous if this understanding is not shared by the other party. Here the conduct of the parties showed a lack of understanding. Whatever the promise was to Avon, a promise was reduced to writing in the agreement drafted by FLS which was sent to Avon and in turn sent by Avon to the Trust. Thus, we have a classic ambiguity which prevents Avon from relying on promissory estoppel. *Yardley v. Yardley,* 484 N.E.2d 873, 879 (2nd Dist. 1985). FLS' Motion for Summary Judgment is granted against Avon. Avon's Motion for Summary Judgment is denied.

### III. CONCLUSION

For the reason stated herein, the Court rules as follows:

1. The Trust's Motion for Summary Judgment against Avon is granted;

2. The Motions for Summary Judgment against the Trust by Avon, Trudeau and Benistar are denied;

3. FLS' Motion for Summary Judgment against the Trust and Thomas Philipsborn is denied;

4. The Trust and Thomas Philipsborn's Motion for Summary Judgment against FLS is granted;

5. FLS' Motion for Summary Judgment against Avon is granted; and

6. Avon's Motion for Summary Judgment against FLS is denied.

**IT IS SO ORDERED.**

                                                    _____
                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

**DATE:** 3/12/2015