**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **THE THOMAS D. PHILIPSBORN IRREVOCABLE INSURANCE TRUST dated July 20, 2005, and ANDREW PHILIPSBORN, as TRUSTEE on behalf of the THOMAS D. PHILIPSBORN IRREVOCABLE INSURANCE TRUST,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**AVON CAPITAL, LLC and DONALD TRUDEAU, BENISTAR, LTD., and BENISTAR ADMIN SERVICES, INC.,**<br><br>    Defendants.<br><br>    and<br><br>**AVON CAPITAL, LLC,**<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>**FINANCIAL LIFE SERVICES, INC.,**<br><br>    Third-Party Defendant,<br><br>    and<br><br>**FINANCIAL LIFE SERVICES, INC.,**<br><br>    Fourth-Party Plaintiff,<br><br>    v.<br><br>**AVON CAPITAL, LLC, THOMAS D. PHILIPSBORN and ANDREW PHILIPSBORN,**<br><br>    Fourth-Party Defendant. | **Case No. 11 C 3274**<br><br>**Judge Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) Defendant Donald Trudeau's Renewed Motion for Judgment as a Matter of Law [ECF No. 252]; (2) Plaintiffs Thomas Philipsborn, Andrew Philipsborn, and the Thomas D. Philipsborn Irrevocable Insurance Trust's (collectively "Plaintiffs") Motion for Prejudgment Interest [ECF No. 250]; and (3) Petitions for Attorneys' Fees from Plaintiffs [ECF No. 228] and Financial Life Services, LLC [ECF No. 230]. For the reasons stated herein, all the motions are denied except Plaintiffs' Petition for Attorneys' Fees, which is granted as modified.

## I. BACKGROUND

This case started off as a simple contract dispute between Plaintiffs and Defendants Avon Capital, LLC and Avon's corporate representative, Donald Trudeau. Since the case's inception, however, the facts have become much more complicated. Plaintiffs amended their Complaint to include Defendants Benistar, Ltd. and Benistar Admin Services, Inc. ("BASI"), alleging that the two companies were liable as undisclosed principals to the contract. Eventually, Avon filed a Third-Party Complaint against Financial Life Services, LLC ("FLS") alleging that FLS was liable to Avon based on an agreement between them. FLS then brought a Fourth-Party Complaint against Plaintiffs and Avon.

Before trial, all parties moved for summary judgment. The Court granted Plaintiffs' Motion against Avon and denied Avon's

Motion against Plaintiffs, finding that Avon agreed to pay Plaintiffs $4,500,000 for three life insurance policies, yet shorted Plaintiffs $819,609.  The parties ultimately agreed that Benistar Ltd. was not liable, and the Court denied BASI's Motion against Plaintiffs, finding that a reasonable jury might conclude that BASI was an undisclosed principal that joined Avon in purchasing the life insurance policies from Plaintiffs.  The Court also denied Trudeau's Motion for Summary Judgment, finding that a jury might believe that Trudeau was personally liable to Plaintiffs in part because Trudeau provided his own, personal references to entice Plaintiffs into dealings with Avon.  As for FLS, the Court denied its Motion against Plaintiffs and granted Plaintiffs Motion against it.  The Court also granted FLS's Motion against Avon and denied Avon's Motion against FLS.

The Court's ruling on the various parties' Motions left only two issues unresolved:  whether Trudeau was personally liable under the contract as a disclosed principal and whether BASI was liable as an undisclosed principal.  The jury found in favor of BASI but against Trudeau, finding that Trudeau owed Plaintiffs $818,512.17.  Trudeau now moves for judgment as a matter of law, Plaintiffs move for prejudgment interest, and both FLS and Plaintiffs petition for attorneys' fees.  The Court will discuss each in turn.

## II. TRUDEAU'S MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Legal Standard

Federal Rule of Civil Procedure 50(a) allows a court to grant a party judgment as a matter of law if a "reasonable jury would not have a legally sufficient evidentiary basis to find for" the non-moving party. Rule 50(b) allows a party to renew a denied motion for judgment as a matter of law within 28 days of an adverse jury verdict. FED. R. CIV. P. 50(b). The Rule also allows a party to move, in the alternative, for a new trial. *Id.* The party seeking judgment as a matter of law after a jury verdict faces a heavy burden. "Once a jury has spoken, [the Court] is obliged to construe the facts in favor of the parties who prevailed under the verdict." *Tate v. Exec. Mgmt. Servs., Inc.*, 546 F.3d 528, 531 (7th Cir. 2008) (quoting *Tart v. Ill. Power Co.,* 366 F.3d 461, 464 (7th Cir. 2004)). The Court examines "all of the evidence in the record to determine whether the evidence presented was sufficient to support the jury's verdict," and the Court may not "make credibility determinations or weigh the evidence." *Id.* at 532 (quoting *Waite v. Bd. of Trs.,* 408 F.3d 339, 343 (7th Cir. 2005)). The Court may only overturn a plaintiff's verdict if "no rational jury could have found for the plaintiff." *Id.* (quoting *Waite,* 408 F.3d at 343).

## B. Analysis

Trudeau argues that there was insufficient evidence for the jury to conclude that he personally contracted with Plaintiffs to purchase the life insurance policies at issue. Trudeau first raised this argument in his Motion for Summary Judgment, and again at the close of Plaintiffs' case. In both instances, the Court rejected it. Although it was a close call, the evidence Plaintiffs presented was just enough to send the question to the jury. The jury found in Plaintiffs' favor, and the Court sees no new reason to reverse its two prior rulings.

Moreover, Trudeau's recitation of the evidence against him is narrow and fails to account for the larger picture. According to Trudeau, the only evidence against him was an email in which he provided Plaintiffs personal references when Plaintiffs grew concerned about the deal. Because that email does not, in itself, reference an offer, acceptance, or consideration, Trudeau argues that the evidence does not support the verdict.

This argument fails to appreciate the context in which the jury decided the case, and it impermissibly takes a view of all the evidence solely in Trudeau's favor. The jury was informed that the Court had already determined that Avon and Plaintiffs entered into a contract, and there is no dispute that Trudeau was Avon's agent negotiating the deal. The jury therefore knew that Avon entered into a binding contract through Trudeau offering to

buy the life insurance policies and Plaintiffs accepted. Based on this evidence, a reasonable jury could have inferred that, by providing his own personal references as a means of inducing Plaintiffs to enter into the contract, Trudeau intended to join the existing contract as a party himself. This is enough to sustain the jury's verdict, and the Court therefore need not address Trudeau's alternative arguments.

### III. PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST

#### A. Legal Standard

The Court, sitting in diversity, must "look to state law to determine the availability of (and rules for computing) prejudgment interest." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1405 (7th Cir. 1997). Unless the parties expressly agree otherwise, Illinois' Interest Act allows a party to recover prejudgment interest, provided that "the amount is a fixed amount or easily computed." *Id.*

The Interest Act only applies, however, in a handful of scenarios, only two of which possibly apply in this case. First, it allows creditors to receive prejudgment interest for "all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." 815 ILCS 205/2. Second, it allows interest on money a party owes but withholds — even if the agreement was not reduced to writing — if the withholding amounts to an "unreasonable and vexatious delay of payment." *Id.*

**B. Analysis**

Plaintiffs' Motion focuses on whether the amount owed is fixed or easily computed, but the Motion does not explain which provision of the Interest Act applies. That analytical step is crucial, because prejudgment interest is not available unless one of the Interest Act's provisions applies, even if the amount is fixed or easily computed. *See, Oak Park Trust and Sav. Bank v. Intercounty Title Co. of Ill.*, 678 N.E.2d 723, 728 (Ill. App. Ct. 1997) ("It is well established that an insurance policy is a written instrument within the meaning of the statute authorizing prejudgment interest. Accordingly, prejudgment interest may be recovered . . . .") (internal citation omitted). The agreement between the parties in this case was never reduced to a written instrument, and Plaintiffs have not cited any case law showing that an amorphous agreement like the one in this case qualifies as a written instrument similar to a promissory note or bond under the statute.

The only other statutory provision that might apply states that prejudgment interest may be awarded when one party withholds payment in an unreasonable or vexatious manner. This provision does not apply, however, when the payment is withheld because of a genuine and reasonable dispute. *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 757 (7th Cir. 2002). Mere delay in payment is not enough. Instead, "the debtor must in some way have thrown

obstacles in the way of the collection of the demand, or by some circumvention . . . have induced the creditor to prolong the time of proceeding against him." *Sammis v. Clark,* 13 Ill. 544, 547 (1852). The parties' dispute in this case was reasonable and appears to be genuine, and Plaintiffs have not shown that Avon and Trudeau acted in bad faith in disputing Plaintiffs' claims.

Plaintiffs have not shown that the agreement here is an "instrument of writing" or that Avon's and Trudeau's withholding of payment was unreasonable or vexatious. Thus, the Interest Act does not apply and prejudgment interest is not available to Plaintiffs.

### IV. <u>ATTORNEYS' FEES</u>

#### A. Legal Standard

Both Plaintiffs and FLS petition for attorneys' fees against one another pursuant Section 10 of the Financial Life Services LLC Life Insurance Policy Purchase and Sale Agreement (the "Agreement") entered into by Plaintiffs and FLS, which provides:

> Should any claim, arbitration, proceeding, contest or litigation arise as a consequence of this Agreement, the prevailing party shall be awarded all costs, expenses and fees, including reasonable attorneys' fees incurred in the defense or settlement of such contest or litigation.

Illinois law makes clear that when a contract calls for the shifting of attorneys' fees, a court should award "all commercially-reasonable fees no matter how the bills are stated." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518,

520 (7th Cir. 1999). Thus, the standard in a contractual fee-shifting case is a "commercially reasonable" standard and does not require courts to engage in a "detailed, hour-by-hour review" of a prevailing party's billing records. *Id.* at 521.

To determine a commercially-reasonable attorney's fee, a court begins by multiplying the hours that were reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The resulting figure is commonly referred to as the lodestar. The movant bears the burden of demonstrating the reasonableness both of the time expended and the hourly rate. *Id.* at 437. Courts may adjust the lodestar based on any of the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n.3. Of these factors, many "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n.9.

## B.  Analysis

### *1. Plaintiffs' Petition Against FLS*

Plaintiffs contend that because they were the prevailing party as to the claims raised by FLS against them, they are entitled to reasonable attorneys' fees in the amount of at least $123,860.60 and at most $148,291.37.  FLS does not contest that Plaintiffs are the prevailing party or the reasonableness of Plaintiffs' attorneys' hourly rates.  Therefore, the Court accepts Plaintiffs' attorneys' rates as reasonable and will only deduct from the requested fees if it finds the hours incurred to be commercially unreasonable.

Plaintiffs have requested 100% reimbursement for work that relates solely to FLS's claims.  FLS argues that all of the work Plaintiffs' attorneys did on FLS's claims was necessary for Plaintiffs' claims against the other parties and therefore FLS should not be required to pay these fees.  Without more, this argument is pure conjecture.  The Court has no reason to question the veracity of Plaintiffs' attorneys' assertions that when 100% of the work was billed to the FLS matter that work related solely to Plaintiffs' defense of claims and issues raised by FLS.  *See,* Ex. 2 ¶ 11.  Although this work may have also been beneficial to Plaintiffs' claims against the other parties, it "a[rose] as a consequence of" litigation resulting from the Agreement with FLS, and therefore the fees are compensable.

The Court declines FLS's invitation to engage in a "detailed, hour-by-hour review" of Plaintiffs' attorneys' billing records, *Medcom,* 200 F.3d 518, 521 (7th Cir. 1999), and will only review the fees to which FLS has specifically objected. FLS raises four specific objections to the hours Plaintiffs' attorneys' claim to have expended on FLS's claims. The Court addresses each objection below.

### *a. Work Done in Pursuit of Affirmative Claims Against Avon, Trudeau and BASI*

FLS first argues that it should not be required to pay attorneys' fees for work done by Plaintiffs' attorneys in pursuit of their affirmative claims against Avon, Trudeau and BASI. FLS bases this argument on the language in Section 10 that the prevailing party's attorneys' fees shall be paid only for litigation "aris[ing] as a consequence of this Agreement." FLS contends that any litigation between Plaintiffs and Avon, Trudeau, and BASI did not "arise as a consequence of" the Agreement. Plaintiffs have requested 80% reimbursement for work that related to both FLS's claims and the Plaintiffs' claims against the other parties ("mixed hours") and 50% reimbursement for work done on summary judgment motions where it is unclear for which motion the work was done ("MSJ hours"). FLS argues that these percentages are too high.

The Court agrees with FLS that of the "mixed hours" billed, the percentage Plaintiffs attribute to work done on FLS's claims

is unreasonably high. Plaintiffs were pursuing claims against numerous parties in addition to defending against FLS's claims. Thus, the majority of the litigation in this case was not between Plaintiffs and FLS. It is hard to imagine how 80% of the "mixed hours" "a[rose] as a consequence of" the Agreement between Plaintiffs and FLS. But, by the same token, it cannot be said — as FLS suggests — that none of the "mixed hours" "a[rose] as a consequence of" the Agreement. At least a portion the "mixed hours" work should be attributed to FLS's claims against Plaintiffs. Therefore, the Court finds it reasonable to attribute 50% of the "mixed hours" to FLS. Plaintiffs' petition claims a total of $51,769.97 in fees for "mixed hours." After reducing this total by 50% FLS is responsible for $25,884.99.

Similarly, Plaintiffs' attorneys' fees summaries include numerous entries for work done on summary judgment motions without indicating for which party's motion the work was done. The fees associated with these "MSJ hours" total $29,025.00. Plaintiffs have requested that FLS pay 50% of these fees. Plaintiffs were involved in four of the motions for summary judgment filed in this case, only two of which involved FLS. Therefore, of the work Plaintiffs did on summary judgment motions, it could reasonably be said that half "a[rose] as a consequence of" the Agreement between FLS and Plaintiffs. As such, the Court finds Plaintiffs' request for $14,512.50 in fees for "MSJ hours" to be reasonable.

FLS also argues that any work done to prove that the Court has subject matter jurisdiction over the case is not compensable because the Plaintiffs had the burden of proving this even if FLS were not involved in the suit. Although it is true that the Plaintiffs had the burden of proving the existence of subject matter jurisdiction, FLS was the only party challenging the court's jurisdiction in this case. By raising continuous challenges to the Court's jurisdiction, FLS created the work for which it is now being charged. Moreover, Plaintiffs successfully defeated these challenges and met their burden of proving the Court had jurisdiction. Therefore, Plaintiffs are entitled to the $21,075.00 in fees claimed for this work.

   *b. Work Related to Unsuccessful Motion Practice*

Next, FLS argues that Plaintiffs should not be awarded fees for work done on unsuccessful motions, like Plaintiffs' motion to dismiss FLS's claims. FLS's claims against Plaintiffs "a[rose] as a consequence of" the Agreement between FLS and Plaintiffs, so Plaintiffs' motion to dismiss those claims necessarily did as well. The Agreement provides that the prevailing party's attorneys' fees shall be reimbursed. It contains no limitation regarding reimbursement for unsuccessful work done prior to the prevailing party's ultimate success in the suit. Therefore, the Court grants Plaintiffs' request for $18,075.00 in fees for work done on motions filed against FLS.

### c. Work on Plaintiffs' Fee Petition

FLS argues further that Plaintiffs are not entitled to recover fees incurred in preparing the fee petition because the majority of the fees sought by Plaintiffs in their petition are not compensable. The Court disagrees. A review of Plaintiffs' fee petition shows that most of the fees they have requested are commercially reasonable and compensable. Therefore, Plaintiffs are entitled to recover the fees incurred in preparing the fee petition. *Phoenix Bond & Indem. Co. v. Bridge,* No. 05 C 4095, 2014 WL 1688491, at *5 (N.D. Ill. Apr. 29, 2014).

The total amount of fees requested for work done in preparation of Plaintiffs' fee petition is $7,775.00. Of this work, $5,075.00 has already been dealt with as part of the "mixed hours" analysis above. Plaintiffs are entitled to the remaining $2,700.00 in full.

### d. Work Done on Behalf of Tom Philipsborn

Finally, FLS argues that Plaintiffs should not be awarded fees for any work done on behalf of Tom Philipsborn because he is not a party to the Agreement. It is true that Tom Philipsborn is not a party to the Agreement between FLS and the Trust. As such, he does not have a contractual right to recover attorneys' fees. Plaintiffs have requested $5,075.00 in fees for work that related to both Tom Philipsborn and the Trust. Because there is no way to identify the compensable work from the non-compensable work

associated with these fees, the Court finds it reasonable to award Plaintiffs 50% of the amount claimed, or $2,537.50.

To summarize, the Court grants Plaintiffs' Request for Attorneys' Fees as modified. Plaintiffs are entitled to the following amounts in attorneys' fees:

1. $23,250 for work that was 100% attributable to FLS's claims and only generally objected to as also necessary for Plaintiffs' claims against the other parties;

2. $25,884.99 for "mixed hours";

3. $14,512.50 for "MSJ hours";

4. $21,075.00 for Plaintiffs' burden issues raised by FLS;

5. $18,075.00 for motion practice against FLS;

6. $2,700.00 for preparation of fee petition;

7. $2,537.50 for work that related to the Trust and Tom Philipsborn.

Therefore, Plaintiffs' Request for Attorneys' Fees is reduced to a total of $108,034.99.

### *2. FLS's Motion Against Plaintiffs*

The Court granted Plaintiffs' Motion for Summary Judgment against FLS and denied FLS's Motion for Summary Judgment against Plaintiffs. Therefore, FLS did not prevail in its claims against Plaintiffs and has no right under the plain language of Section 10 of the Agreement to recover attorneys' fees from Plaintiffs. Nonetheless, FLS argues that Section 10 of the Agreement should be construed as an indemnity clause entitling FLS to indemnification

by Plaintiffs for the fees FLS incurred in defending against Avon's claim. FLS's argument in this regard fails for two reasons.

First, FLS's proposed construction of Section 10 goes against Illinois law and the plain language of the Agreement. Illinois cases have established that indemnity contracts must be strictly construed. *Downs v. Rosenthal Collins Group, LLC,* 895 N.E.2d 1057, 1059 (2008). Section 10 is labeled "Attorneys' Fees" and makes no mention of "indemnity" or "indemnification." On its face, Section 10 is a fee-shifting provision between the two parties to the contract. The Court declines to construe this provision beyond its terms to require indemnification for attorneys' fees incurred against third parties.

Second, *even if* the Court were to construe Section 10 as an indemnity clause, the claim brought by Avon against FLS "is based, at least in part, and perhaps in its entirety, on a second undertaking of FLS directly with Avon." (ECF No. 213). As such, Avon's claims against FLS did not "arise as a consequence of" the Agreement between FLS and Plaintiffs, and FLS does not have a contractual basis by which to claim attorneys' fees from Plaintiffs.

FLS does not have a contractual right to recover attorneys' fees from Plaintiffs because it is not the "prevailing party" in

its claims against Plaintiffs. Therefore, FLS's request for $362,186.40 in attorneys' fees is denied.

## V. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Plaintiffs' Petition for Attorneys' Fees [ECF No. 228] is granted as modified;

2. Plaintiffs are awarded attorneys' fees in the amount of $108,034.99;

3. Trudeau's Renewed Motion for Judgment as a Matter of Law [ECF No. 252] is denied;

4. Plaintiffs' Motion for Prejudgment Interest [ECF No. 250] is denied; and

5. FLS's Petition for Attorneys' Fees [ECF No. 230] is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　United States District Court

Dated:September 28, 2015